AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    **15 - 1627 M** |
| United States Postal Priority Mail parcel, bearing tracking label number 9114 9012 3080 1947 5851 86 | ) ) ) | |

FILED
CLERK, U.S DISTRICT COURT

SEP 1 - 2015

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ **Central** _____ District of _____ **California** _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b) | See attached Affidavit |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/
*Applicant's signature*

Teresa Cabrera, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   **9/1/15**

City and state:  Los Angeles, California

**JEAN P. ROSENBLUTH**
*Judge's signature*

Hon. Jean Rosenbluth, U.S. Magistrate Judge
*Printed name and title*

AUSA: Lindsey Greer Dotson x4443 LGD

LODGED

2015 SEP 1 PM 1: 08
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

## ATTACHMENT A

SUBJECT PARCEL

The SUBJECT PARCEL is a United States Postal Priority Mail parcel, bearing tracking label number 9114 9012 3080 1947 5851 86.  The SUBJECT PARCEL is further described as a brown cardboard, United States Postal Service Ready Post shipping box, measuring 15" x 12" x 10", taped with Priority Mail tape.  The SUBJECT PARCEL is addressed to "Diana Valdez, 418 SW 1st Ct., Boynton Beach, FL 33435," has a return address of "Mark Torres, 1132 Hunting Dr., Duarte, CA 91010," and was postmarked on August 26, 2015, in La Puente, California 91746.

## ATTACHMENT B

ITEMS TO BE SEIZED

The following are the items to be seized from
the SUBJECT PARCEL, which constitute fruits, instrumentalities,
and evidence of violations of Title 21, United States Code,
Sections 841(a)(1) (Distribution and Possession with Intent to
Distribute a Controlled Substance) and 843(b) (Unlawful Use of a
Communication Facility (including the mails) to Facilitate the
Distribution of a Controlled Substance):

     a.    Any controlled substances; and/or

     b.    Currency, money orders, bank checks, or similar
monetary instruments in aggregate quantities over $1,000.

## AFFIDAVIT

I, Teresa Cabrera, being duly sworn, hereby depose and say:

### I.  INTRODUCTION

1.    I am a United States Postal Inspector ("Postal Inspector") and have been so employed since January 2006.  I have completed a twelve-week basic training course in Potomac, Maryland, which included training in the investigation of narcotics trafficking via the United States Mail.  I have also completed a training course regarding the investigation of narcotics mailers and shippers.  I am currently assigned to the Los Angeles Division, Prohibited Mailings Illegal Narcotics Team, which is responsible for investigating narcotics violations involving the United States Mails.  I have participated in numerous investigations of narcotics violations.

### II. PURPOSE OF AFFIDAVIT

2.    This affidavit is made in support of an application for a search warrant for the SUBJECT PARCEL, described below in paragraph 4 and Attachment A, for the items listed in paragraph 5 and Attachment B, which constitute the fruits, instrumentalities, and evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance) and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance).

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and

information obtained from other law enforcement agents and
investigators. This affidavit is made for the sole purpose of
demonstrating probable cause for the issuance of this search
warrant and does not purport to set forth all of my knowledge of
this investigation.

### III. PARCEL TO BE SEARCHED

4.      This affidavit is made in support of an application
for a search warrant for the following United States Postal
Service ("USPS") parcel (the "SUBJECT PARCEL"):

        a.      The SUBJECT PARCEL is a United States Postal
Priority Mail parcel, bearing tracking label number 9114 9012
3080 1947 5851 86. The SUBJECT PARCEL is further described as a
brown cardboard, USPS Ready Post shipping box, measuring 15" x
12" x 10", taped with Priority Mail tape. The SUBJECT PARCEL is
addressed to "Diana Valdez, 418 SW 1st Ct., Boynton Beach, FL
33435," has a return address of "Mark Torres, 1132 Hunting Dr.,
Duarte, CA 91010," and was postmarked on August 26, 2015, in La
Puente, California 91746.

### IV. ITEMS TO BE SEIZED

5.      The following are the items to be seized from
the SUBJECT PARCEL, which constitute fruits, instrumentalities,
and evidence of violations of Title 21, United States Code,
Sections 841(a)(1) (Distribution and Possession with Intent to
Distribute a Controlled Substance) and 843(b) (Unlawful Use of a
Communication Facility (including the mails) to Facilitate the
Distribution of a Controlled Substance):

        a.      Any controlled substances; and/or

2

b.    Currency, money orders, bank checks, or similar
monetary instruments in aggregate quantities over $1,000.

### V.   STATEMENT OF PROBABLE CAUSE

#### Summary

6.    Based on my training and experience, investigation in
this case, personal observations, and conversations with other
law enforcement agents, I believe that the SUBJECT PARCEL
contains controlled substances or proceeds from the trafficking
of controlled substances.  As described in detail below, the
SUBJECT PARCEL is an outbound parcel to Florida and was selected
for investigation because it met certain criteria common to
packages containing contraband.  Among other things, a trained
narcotics-detection canine gave a positive alert to the SUBJECT
PARCEL for the presence of controlled substances or other items,
such as proceeds from the sale of controlled substances, which
have been contaminated by controlled substances.

#### Background

7.    Based on my training and experience and conversations
with other Postal Inspectors, I am aware that, since the mid-
1980s, Postal Inspectors have been conducting investigations of
drug trafficking via USMS Express Mail and Priority Mail.  In
the early 1990s, Postal Inspectors in Los Angeles, California
began conducting organized interdictions of Express Mail and
Priority Mail parcels suspected of containing controlled
substances and proceeds from the sale of controlled substances.
Along with conducting organized interdictions, Postal Inspectors
also regularly examine and investigate Express Mail and Priority

3

Mail parcels throughout the year.  During the 1990s, Postal Inspectors observed that the trend was for drug traffickers to send controlled substances and proceeds from the sale of controlled substances using boxes, with the proceeds in the form of cash.

8.   Although Postal Inspectors still see the use of boxes for controlled substances and cash, I am aware from my training and experience that there has been a gradual change over the years toward the current trend of using smaller boxes, flat cardboard envelopes, and tyvek envelopes, with proceeds from the sale of controlled substances converted to money orders.  By using money orders, drug traffickers are able to send large dollar amounts in compact form, using much smaller conveyances which lend a sense of legitimacy to the parcel.

9.   Based on my training, personal experience, and the collective experiences related to me by fellow Postal Inspectors on my team who specialize in investigations relating to the mailing of controlled substances and proceeds from the sale of controlled substances, I am aware that the Los Angeles area is a major source area for controlled substances.  As such, controlled substances are frequently transported from the Los Angeles area via the United States Mail, and the proceeds from the sale of the controlled substances are frequently returned to the Los Angeles area via the United States Mail.  These proceeds are generally in the form of money orders, bank checks, or similar monetary instruments in an amount over $1,000.  Based on my training and experience, I know that narcotics proceeds often

4

contain the odor of narcotics, because they have been contaminated with or associated with the odor of one or more controlled substances.

10. I also know, based on my training and experience, that drug traffickers will often use one of two USPS services: Express Mail Service, which is the USPS overnight/next day delivery mail product, or Priority Mail Service, which is the USPS two-to-three day delivery mail product. Drug traffickers use the Express Mail delivery service because of its speed, reliability, and the ability to track the article's progress to the intended delivery point. Drug traffickers use the Priority Mail delivery service, because it allows drug traffickers more time for travel between states if they decide to follow their shipments to their destinations for distribution. Also, by adding delivery confirmation to a Priority Mail parcel, drug traffickers have the ability to track the article's progress to the intended delivery point, as if the parcel had been mailed using the Express Mail Service.

11. Based on information derived and aggregated over the years, I, like other Postal Inspectors, initially look for certain characteristics when examining Express Mail and Priority Mail for controlled substances or proceeds from the sale of controlled substances. These characteristics include:

    a.    The article is contained in a box, flat cardboard mailer, or tyvek envelope;

    b.    The article bears a handwritten label, whether USPS Express Mail or Priority Mail;

5

c.    The handwritten label on the article does not contain a business account number;

d.    The seams of the article are all taped or glued shut;

e.    The article emits a particular odor of a cleaning agent or adhesive or spray foam that can be detected by a human; and

f.    Multiple articles are mailed by the same individual, on the same day, from different locations.

12.    Parcels found to meet these characteristics are scrutinized by Postal Inspectors through further investigation, which may include verification of the return and addressee addresses and trained narcotics-detection canine examination.

13.    I know from my experience and training that drug traffickers often use fictitious or incomplete names and/or addresses in an effort to conceal their identities from law enforcement officers investigating these types of cases. Indeed, it is my experience that to the extent real addresses are ever used, it is only to lend a legitimate appearance to the parcel and is almost always paired with a false name.

Investigation Regarding the SUBJECT PARCEL

14.    On August 26, 2015, the Los Angeles Sheriff's Department ("LASD") Parcel and Cargo Narcotics Enforcement Team ("PACNET") and I were conducting random surveillance at the La Puente, Bassett Branch Post Office, 512 Workman Mill Road, La Puente, California 91746. Detective Tom Logrecco informed me that there was a male in the lobby of the Post Office holding

6

the SUBJECT PARCEL.  Detective Logrecco stated that the SUBJECT
PARCEL met some of the initial suspicious characteristics
described in paragraph 11 above.  Specifically, he observed that
the SUBJECT PARCEL was overly taped, with all of the seams taped
shut.  Detective Logrecco also said that he saw the male further
tape the SUBJECT PARCEL with Priority Mail tape.

15.  Based on my personal observations and conversations
with other agents, I know that Detective Logrecco, along with
Detective Ericka Tagaloa and Sergeant Ruben Nava, then
established surveillance outside the Post Office.  I walked into
the Post Office and stood behind the male, later identified as
Cesar Perez ("Perez"), who was holding the SUBJECT PARCEL.
Perez was the only customer in the lobby.  I observed Perez mail
the SUBJECT PARCEL.  I relayed to PACNET members, via radio,
that Perez paid cash for the transaction, which based on my
training and experience, is common for mailers of narcotics.

16.  Based on my conversations with Detective Tagaloa and
other law enforcement agents, I am aware of the following:

a.  Detective Tagaloa observed Perez enter the rear
passenger side of a gold Honda Accord bearing license plate
number 3LWR346.  Agents followed vehicle out of the Post Office
parking lot and noted that the driver was texting on his
cellphone.  A traffic stop was then initiated to further
investigate the mailing of the SUBJECT PARCEL.

b.  Detective Tagaloa then spoke with Perez.  After
Detective Tagaloa read Perez his Miranda rights, Perez agreed to
speak without an attorney present.

c.    Regarding the SUBJECT PARCEL, Perez stated that he received the SUBJECT PARCEL from an unknown male at an unknown location.  Perez indicated that he was getting paid to mail the SUBJECT PARCEL.  Perez said that he believed the SUBJECT PARCEL might contain "marijuana" but added that he "doesn't ask questions."

17.    On August 26, 2015, I used the CLEAR database to research the return address listed on the SUBJECT PARCEL: "Mark Torres, 1132 Hunting Dr., Duarte, CA 91010."  CLEAR is a public information database utilized by law enforcement that provides names, addresses, telephone numbers, and other identifying information regarding a particular address.  CLEAR was not able to locate the address listed for the SUBJECT PARCEL in its database.

18.    On August 26, 2015, I used the CLEAR database to research the recipient address listed on the SUBJECT PARCEL: "Diana Valdez, 418 SW 1st Ct., Boynton Beach, FL 33435."  The CLEAR search was able to locate the address in its database. The CLEAR search, however, did not associate the name "Diana Valdez" as a current or past resident at the address.

**Positive Dog Alert on the SUBJECT PARCEL**

19.    Based on my conversations with Detective Brian McBride, I know that on or about August 27, 2015, Detective McBride and his trained narcotics-detection canine, "JerryLee," conducted an exterior examination of the SUBJECT PARCEL. Detective McBride informed me that "JerryLee" gave a positive alert to the SUBJECT PARCEL, thereby indicating the presence in

8

the SUBJECT PARCEL of controlled substances or other items, such
as the proceeds from the sale of controlled substances, which
have been recently contaminated or associated with the odor of
controlled substances.  Attached hereto, and incorporated herein
by reference as Exhibit 1, is information provided by Detective
McBride regarding "JerryLee's" training and history in detecting
controlled substances, as well as the examination of the SUBJECT
PARCEL.

///

///

///

## VI. CONCLUSION

21.   Based on the foregoing facts and opinions, I believe that there is probable cause to conclude that the SUBJECT PARCEL, described in Attachment A, contains controlled substances or proceeds from the sale of controlled substances as described in Attachment B, constituting evidence of violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance) and 843(b) (Unlawful Use of a Communication Facility (including the mails) to Facilitate the Distribution of a Controlled Substance).

/S/
_____
Teresa Cabrera,
United States Postal Inspector
United States Postal
Inspection Service

Subscribed to and sworn before me
this _1st_ day of September, 2015.

**JEAN P. ROSENBLUTH**
_____
HONORABLE JEAN ROSENBLUTH
UNITED STATES MAGISTRATE JUDGE

10

EXHIBIT 1

## STATEMENT

On 8-27-15, I, Los Angeles County Detective Brian McBride #279447, was asked to have my assigned Narcotic Detection trained and certified canine partner JerryLee conduct a sniff of a USPS Priority Mail Parcel, with tracking number 9114 9012 3080 1947 5851 86, in order to determine if he would show an alert to any odors of narcotics emitting from it. At 9029 Airport Bl., Los Angeles, California, I had Jerry Lee sniff an area that contained numerous cabinets, desks and boxes. JerryLee had no alerts in this area. The parcel was then placed in this area and I again had JerryLee sniff the area. When JerryLee sniffed the area the second time, he located and alerted to the parcel, indicating that the odor of narcotics was in fact present, coming from it.

## OFFICER'S EXPERTISE

I, Brian McBride, have been a Deputy Sheriff for both Orange and Los Angeles Counties for over 27 years. I am currently employed by the Los Angeles County Sheriff's Department and have been so employed for twenty five years. I have been assigned to the Detective Division as a Narcotics Investigator for the past 17 years and as a Canine Handler for the past 13 years. In addition to my extensive Law Enforcement training, my training and experience as it relates to Police Service Canines includes the following:

- While assigned as a Canine Handler I have had four canine partners. Each new canine partner required that I attend a training class with the new canines. These classes were a minimum of 200 hours and then a testing process was required to graduate. In addition to the initial training, I have completed in excess of 4500 hours of canine related training and over 5000 searches with my canine partners.
- Yearly I have attended state and/or national week long Detection Canine Training Seminars.
- I have certified yearly with my canine partners, initially through the California Narcotic Canine Association (CNCA) and more recently through the National Police Canine Association (NPCA).
- I was a certifying official and instructor for the CNCA and I am currently a certifying official and instructor for the NPCA.
- I completed a canine trainers' course through Alpha K-9 Training Center and Master Trainer Randy Hare. I successfully completed this course which certified me as a Narcotic Detection Canine Trainer.
- Between the months of October 2010 and March 2011, I was trained by Officer Zibli of the Los Angeles Police Department in the "Minimal Odor Method" of Narcotic Detection Canines and assisted him in the training three Los Angeles County Narcotics Bureau Detection Canines.
- In July 2011, I assumed the responsibility of Narcotics Bureau Detection Canine Unit Trainer. Since that date I have developed and implemented Los Angeles County Sheriff Department's canine handler training program and successfully trained six canine teams.

**Page 1 of 2**

- Between 10-31-11 and 12-12-11, I trained my current canine partner "JerryLee" in the "Minimal Odor Narcotic Detection Canine Method". During this initial training we completed over 300 hours of training and successfully completed the Los Angeles County Sheriff's Department Narcotic Detection Canine Course. During this course JerryLee learned the odor of five illegal narcotic substances (Cocaine, Methamphetamine, Heroin, Marijuana and Opium) and learned to alert to them. In order to successfully complete this course JerryLee's ability to recognize and alert to these odors was tested and successfully proven hundreds of times. Additionally, JerryLee was tested to ensure those five odors were the only odors he would alert to. JerryLee has never alerted to any odors other than the five narcotic substances he was trained in. Since our initial 300 hours of training, JerryLee and I have completed in excess of 2700 additional hours of training and testing, we have completed over 1400 searches and JerryLee's Alerts have been used as probable cause in at least 400 search warrants.
- During our training, I routinely have JerryLee check uncirculated currency to insure that he is never alerting to the odor produced by currency. He has never alerted to uncirculated currency. Additionally, both during training and in deployments, I expose Jerrylee to circulated currency. This is done intentionally with currency I possess or know about and unintentionally with money we run across belonging to others. JerryLee has never alerted to the currency I possess and has only alerted to other currency in situations where the currency is obviously related to and tainted with one of the illegal narcotic odors that he is trained to alert to.
- I have testified as an expert witness in issues related to my canine partners and other canine teams in both state and federal court.
- I was most recently certified by Officer E. Zibli and Officer Dave Dooros of the NPCA on 01-14-15.

-

| | |
|---|---|
| Detective Brian McBride | 08-27-15<br>Date |